UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MIKAYLA WEST,

        Plaintiff,

v                                              Case No. 17-14218
                                              Honorable Thomas L. Ludington

ROBERT WILKE,

        Defendants.

_____/

**ORDER DENYING DEFENDANT'S MOTION FOR RECONSIDERATION**

On December 29, 2017, Plaintiff Mikayla West filed a complaint against Defendant David J. Shulkin, now-former Secretary of Veterans Affairs. ECF No. 1. On June 1, 2018, Plaintiff filed an amended complaint substituting current Secretary of Veterans Affairs, Robert Wilkie, as Defendant.[1] ECF No. 16. Plaintiff claims that Defendant and his agents racially discriminated and retaliated against her for engaging in protected activity under Title VII by terminating her employment. *Id.* On May 6, 2019, Defendant filed a motion for summary judgment. ECF No. 27. The motion was granted in part and denied in part, dismissing Plaintiff's race discrimination claim, but retaining the retaliation claim. ECF No. 33. Defendant moved for reconsideration of the Court's order denying Defendant's motion for summary judgment as to Plaintiff's retaliation claim. ECF No. 34. Plaintiff filed a response on August 3, 2019. ECF No. 46.

**I.**

On or about February 19, 2016, Plaintiff Mikayla West started working at the VA Lutz Medical Center in Saginaw, MI as a Certified Nurse's Assistant ("CNA"). ECF No. 27-2 at PageID.362. Plaintiff continued in this position until August 2016, when she became a Licensed

___

[1] Wilkie was officially sworn in as Acting Secretary of Veterans Affairs on March 28, 2018. He assumed office on July 30, 2018.

Practical Nurse ("LPN") at Lutz. *Id.* at PageID.362-363. Plaintiff's change of position was internal from The Community Living Center as a CNA to the Specialty Clinic Unit as a urology and nephrology LPN. *Id.* Plaintiff was interviewed for the LPN position in the Specialty Clinic by Archia Jackson, Chris Tokarski, and Melissa Pritchard. *Id.* At the time of this interview, Jackson was the Nurse Manager, Tokarski was the Assistant Nurse Manager, and Pritchard was a Registered Nurse ("RN") working in the clinic. ECF No. 27-4 at PageID.438, 460. Plaintiff's employment as an LPN was subject to an orientation period for a period to be determined by the nurse manager of the unit. ECF No. 27-4 at PageID.442.

Shortly after Plaintiff was hired in the specialty clinic, in approximately October 2016, nurse manager Jackson was detailed to the Education Department and Tokarski became the Acting Nurse Manager. ECF No. 27-4 at PageID.438. During the ordination period, new employees work with Preceptors. ECF No. 27-2 at PageID.379. Preceptors train new employees, shadowing the new employee and providing feedback on the new employee's clinical notes. *Id.* at PageID.379-380. Preceptors also review the new employees' performance every two weeks. ECF No. 27-4 at PageID.449. During Plaintiff's orientation period, she worked with multiple Preceptors, Susan Sobieray, LPN, Terri Hayes, LPN, Melisa Pritchard, RN, and Cathy Stadler, RN. ECF No. 27-4 at PageID.443. Plaintiff's two-week reviews on the orientation checklist date September 13, 2016, September 27, 2016, October 11, 2016, October 25, 2016, November 21, 2016, December 1, 2016, and December 19, 2016. ECF No. 31-9 at PageID.726. The two-week reviews included positive comments and a significant amount of constructive criticism of Plaintiff. *Id.*

On October 18, 2016, Plaintiff and Tokarski signed Plaintiff's Annual Competency Assessment. ECF No. 31-10. The assessment indicated that Plaintiff had performed satisfactorily in three of seven categories, Plaintiff had previously successfully completed three categories, and

one category was not filled out. *Id.* These seven categories are all job skills and are not concerned with Tokarski's behavioral concerns.

On or about October 26, 2016, Tokarski and Jackson held a meeting with Plaintiff to discuss concerns with Plaintiff's conduct. ECF No. 27-4 at PageId.445. According to Tokarski, this meeting arose out of concerns she had expressed to Jackson about Plaintiff, and that Jackson suggested that the three have a meeting. *Id.* A follow-up email sent after the meeting states that Jackson, Tokarski, and Plaintiff discussed (1) the first two-week orientation review, September 13, 2016, (2) a meeting the following day, September 14, 2016, discussing concerns about expediency and having the door closed, (3) a September 29, 2016 meeting in which Plaintiff indicated she felt she was getting into trouble with her co-workers, (4) an incident involving Plaintiff allegedly failing to obey an order to cover the Urology area that occurred the week of October 11, 2016, (5) an incident with the Podiatry Nurse that occurred October 13, 2016, (6) an incident involving the work order that occurred between October 25–26, 2016, and (7) an incident regarding monthly chart reviews with Ed Marshall. ECF No. 27-8 at PageId.470-471.

On October 27, 2016, Plaintiff replied to the email detailing the October 26, 2016 meeting between Jackson, Tokarski, and Plaintiff. ECF No. 27-13 at PageId.479. In her reply Plaintiff wrote:

> I have read this and I don't agree with any of this I feel as if all of this is opinionated and based off what someone else said. I feel like the work that I do here in the clinic is being overlooked because everyone is looking at the false statements that are being made about me. My character is being degraded based off these inaccurate statements. I really take pride in the work that I do and I go over and beyond for my patients and their families and I just wish that my hard work and dedication didn't go unnoticed. *Id.*

Also, on October 27, 2016 Tokarski received two emails regarding Plaintiff. The first email, from Sobieray, appears to be an orientation update for the weeks of October 17 and 24, 2016. ECF No. 27-10 at PageID.474. In that email Sobieray alleges Plaintiff stated "[i]t gets so

boring especially after 4:30pm" and that "[I] don't understand why someone has to stay when there is 'nothing to do.'" *Id.* Sobieray goes on to write that she "pointed ou[t] there is always something to do" and lists examples. *Id.* Sobieray also shares concerns about Plaintiff, including her need to set-up a voicemail, need to "initiat[e] duties when there is a lull," aversion to doing EKG/procedures, failure to follow note-keeping procedures, and an incident involving a work order. *Id.* The second email is from Marshall detailing an incident where he asked Plaintiff if she wanted to learn about chart reviews and she declined saying "I was not told that we had to do this." ECF No. 27-11 at PageId.476. The following day, on October 28, 2019, Tokarski forwarded both the Sobieray and Ed Marshall emails to Ed Lesko, the Human Resources Officer at the Lutz facility. ECF No. 27-11 at PageID.476; ECF No. 34-1 at PageID.835. However, while the original Sobieray email was included as an exhibit in Defendant's motion for summary judgment, the forwarded email to Lesko was not included until the present motion for reconsideration.

On November 8, 2016, Tokarski had a meeting with Lesko concerning Plaintiff's 90-Day Personal Follow-Up Evaluation. ECF No. 27-18. Defendant principally relied upon this detail in his motion for reconsideration. Tokarski handwrote a note in her calendar on November 8, 2016, "Ed Lesko – asked if I could terminate new employee said no grounds. Needed to give satisfactory for 90 day. Could not extend or give unsatisfactory." *Id.* In her deposition Tokarski stated, "[Lesko] told me I could not mark [Plaintiff] unsatisfactory. As a new management person, I went to HR for guidance, and I have since learned that I can mark somebody as unsatisfactory." ECF No. 27-4 at PageId.449.

On November 9, 2016, Plaintiff received a satisfactory review for her overall performance in her 90-day evaluation. ECF No. 27-19 at PageID.489. Tokarski added a note that stated, "[b]ased

on previous conversations, understanding of expectations set forward and will continue with orientation." *Id.*

Tokarski received two emails discussing specific instances of concerning conduct by Plaintiff on December 6, 2016, one from Susan Sobieray and one from Terri Hayes. ECF No. 27-22 at PageID.493; ECF No. 27-23 at PageID.494. There is no evidence in the motion for summary judgment or the motion for reconsideration indicating that these emails were forwarded to Ed Lesko in HR on or near December 6, 2016.

On December 16, 2016, Plaintiff contacted the EEOC office to initiate an informal EEOC complaint. ECF No. 27-26 at PageID.499. Tokarski stated in her deposition that she first learned about Plaintiff's EEOC complaint when she was invited by Cherryl Biggins, who works for the EEOC office, to provide a fact-finding statement. ECF No. 27-4 at PageID.451.

On December 19, 2016, Plaintiff completed orientation. PageID.430.

On December 23, 2016, Plaintiff submitted her Pre-Complaint paperwork stating that she was discriminated by Tokarski and her coworkers on the basis of race. ECF No. 31-20 at PageID.743.

On January 13, 2017, Cherryl Biggins sent a memorandum summarizing her investigation of Plaintiff's EEOC claim to Kathryn Ball. ECF No. 27-38 at PageID.514-518. Biggins explained Plaintiff's allegations and summarized fact-finding interviews she had conducted with fifteen witnesses who worked with Plaintiff and Tokarski, as well as Plaintiff and Tokarski themselves. *Id.* On January 13, 2017, Tokarski received an autogenerated email asking her to watch a presentation before her upcoming EEOC mediation. ECF No. 27-39 at PageID.519-520. Tokarski then emailed Biggins, asking Biggins to explain what the email meant, which Biggins did in the third email. *Id.*

On January 27, 2017, Tokarski requested to meet with Plaintiff. ECF No. 31-26 at PageID.770. On January 27, 2017, Lesko issued a letter to Plaintiff titled "Termination During Probationary Period," but the parties agree that Plaintiff did not receive the letter on this date. ECF No. 27-43 at PageID.524-525. Plaintiff responded to Tokarski that she wanted Tabitha Petty present at the meeting, a union representative Plaintiff previously corresponded with. ECF No. 31-26 at PageID.770. Petty was not working that day. *Id.* The situation allegedly triggered Plaintiff's asthma and Cathy Stadler, RN, found Plaintiff "at her desk, having a lot of difficulty breathing." ECF No. 31-28 at PageID.773. Plaintiff visited the office of Minoo Khetarpal, M.D. on January 30, 2017, who recommended approximately a one week leave of absence for health reasons. ECF No.31-29 at PageID.774.

On January 30, 2017, Lesko issued a second termination letter, identical to the first letter, to Plaintiff, which was served on her residence. ECF No. 31-30 at PageID. 775. The letter stated that when "it becomes apparent that an employee's conduct, general character traits or capacity do not meet the requirements for satisfactory service, the supervisor is required to initiate action to separate the employee." *Id.* The letter further states that Tokarski "recommended that [Plaintiff] be terminated" for "failure to follow instructions and conduct." *Id.* Tokarski testified that the decision to terminate Plaintiff was made "a week or two before" her actual termination. ECF No. 27-4 at PageID.453.

On December 13, 2017, the Director of the Office of Employment Discrimination Complaint Adjudication, Maxanne R. Witkin, issued the final agency decision on Plaintiff's EEOC claims. ECF No. 27-45 at PageID.528-538. The decision stated that "for the purpose of analysis," Plaintiff was assumed to have met the prima facie case for racial discrimination and retaliation,

but Plaintiff "fails to produce sufficient evidence to demonstrate that management's legitimate, nondiscriminatory reasons for its actions are pretext." ECF No. 27-45 at PageID.534–535.

**II.**

Pursuant to Eastern District of Michigan Local Rule 7.1(h), a party can file a motion for reconsideration of a previous order within fourteen days. A motion for reconsideration will be granted if the moving party shows: "(1) a palpable defect, (2) the defect misled the court and the parties, and (3) that correcting the defect will result in a different disposition of the case." *Mich. Dept. of Treasury v. Michalec*, 181 F. Supp. 2d 731, 733-34 (E.D. Mich. 2002) (quoting E.D. Mich. LR 7.1(g)(3)). A "palpable defect" is "obvious, clear, unmistakable, manifest, or plain." *Id.* at 734 (citing *Marketing Displays, Inc. v. Traffix Devices, Inc.*, 971 F. Supp. 2d 262, 278 (E.D. Mich. 1997)). "[T]he Court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the Court, either expressly or by reasonable implication." E.D. Mich. L.R. 7.1(h)(3). *See also Bowens v. Terris*, 2015 WL 3441531, at *1 (E.D. Mich. May 28, 2015).

**III.**

Defendant takes issue with the following portion of the Court's opinion:

> In his motion for summary judgment, Defendant merely argues in a conclusory statement that Plaintiff "cannot show that [Defendant's] decision [to fire Plaintiff] was a pretext for retaliation." PageID.353. Unlike his other arguments contained in his motion for summary judgment, here, Defendant did not "cit[e] to particular parts of materials in the record" to support his argument that summary judgment is warranted. Fed. R. Civ. P. 56 (c)(1). Defendant has therefore waived his argument. Cf. McPherson v. Kelsey, 125 F.3d 989, 995-96 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones."). Accordingly, because Plaintiff has established a prima facie case of retaliation, Defendant is not entitled to summary judgment on Plaintiff's retaliation claim.
> Even if Defendant had advanced a proper argument for summary judgment, Plaintiff has met her burden in raising a triable issue of fact as to whether Defendant's proffered reason for Plaintiff's termination was a pretext for retaliation. Tokarski's decision to forward complaints about Plaintiff's performance to HR only after Plaintiff filed an EEO charge establishes a triable

> issue of fact that Defendant's reason for Plaintiff's termination was insufficient to motivate Defendant's decision. As discussed above, Tokarski received numerous complaints concerning Plaintiff's conduct before Plaintiff filed her EEO charge. However, Tokarski did not choose to forward those emails to HR. Tokarski then received similar complaints from co-workers after she learned about Plaintiff's EEO charge but decided that some of those complaints were worth HR's attention. Therefore, a triable issue of fact exists as to whether Defendant's proffered reason for Plaintiff's termination was pretextual and Defendant is not entitled to summary judgment on Plaintiff's retaliation claim.

ECF No. 33, PageID.820.

Specifically, Defendant asserts that the Court made two palpable errors. First, Defendant argues that the Court improperly placed the burden on Defendant in analyzing the facts at the pretext stage of the *McDonnel Douglas* burden-shifting framework. Irrespective of who bears the ultimate burden of proof at trial, however, the Defendant (as the movant) has an obligation under Federal Rule of Civil Procedure 56(c) to explain why Plaintiff cannot, on these facts, meet her trial burden, and to cite material parts of the record in support of that explanation. As explained in the previous opinion, if the plaintiff succeeds in establishing a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory rationale for the adverse employment action. *In re Rodriguez*, 481 U.S. 792, 1008 (1972). Once the employer does so, the burden shifts back to the plaintiff to demonstrate that the articulated reason is a mere pretext for discrimination. *Id.* Defendant is correct that, at trial, the jury is not instructed on the McDonnel Douglas burden shifting framework and is instructed that the plaintiff has the burden of proof on each one of the elements of her claim. However, in a motion for summary judgment, the framework does apply and the moving party has the burden to prove there is no "genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This includes providing reasons why Plaintiff will not be able to prove that the reason advanced by the employer is pretext (i.e., the third step of the burden shifting scheme).

Defendant successfully argued that Plaintiff could not prove that Defendant's reason for interference with her employment – failing to follow instructions and unsatisfactory conduct – was a pretext for race discrimination.[2] However, Defendant did not address the issue in responding to the retaliation claim. The brief includes a simple conclusory sentence providing that "West cannot show that decision was a pretext for retaliation." ECF No. 27 at PageID.353. The rule 56(c) burden would be meaningless if Defendants could simply cite to the rule and leave the Court to locate the supporting evidence.

Second, Defendant argues that the Court overlooked the fact that it did cite record evidence in support of its argument that the decision to terminate Plaintiff was not a pretext for retaliation. Defendant underscores that, contrary to the Court's finding, Tokarski did forward performance-related emails to human resources prior to the protected activity and also sought to terminate Plaintiff prior to her protected activity.

Indeed, Defendant did make the following assertions in the "factual background" portion of his motion for summary judgment:

> Also in late October, Tokarski contacted Ed Lesko, the Human Resources Officer at the Lutz facility. (Ex. 3, 27:12-23, 81:18-24). She said that as a new manager, she went to human resources for guidance and was told by Lesko that she could not terminate West or mark her as unsatisfactory during her orientation period. (Id. at 67:14-24). Tokarski memorialized Lesko's answer in her November 8, 2016, calendar entry, including writing: "Ed Lesko – asked if I could terminate [illegible] said no grounds. Needed to give satisfactory for 90 day. Could not extend or give unsatisfactory." (Ex. 17, Calendar entry, DEF-0554)

ECF No. 27 at PageID.336.

Defendant then made the following argument in its analysis section:

> There is, however, evidence that shows Tokarski asked Lesko, the HR director, in late October if Tokarski could fire West or give her an unsatisfactory 90-day review. These questions came more than a month before West opened her EEO claim. Even assuming that West could show circumstantial evidence of retaliation,

---

[2] See Subsection IV.D. of Defendant's Motion for Summary Judgment. ECF No. 27.

her retaliation claim fails because the decision to fire West had a legitimate, non-discriminatory basis, discussed *supra*, and West cannot show that decision was a pretext for retaliation.

*Id.* PageID.353.

The first of the two paragraphs provides factual statements and corresponding citations as part of Defendant's factual history. The second paragraph of legal argument addressing the pretext prong appears seventeen pages later and is simply a conclusory paragraph untethered to any assertion of fact. There are no citations to evidence or the earlier factual outline.

In addition to Defendant's assertion that the conversations with Ed Lesko occurred prior to the protected activity, Defendant argues that the Court inaccurately concluded that Tokarski did not forward emails to HR prior to the protected activity. ECF No. 34 at PageID.831. Indeed, Tokarski did forward an email to Ed Lesko on October 28, 2016. The email was sent to Tokarski one day prior by one of Mikayla's co-workers Edward Marshall:

> I was doing Chart reviews and Mikayla stopped in and asked what I was doing, and I informed her that this is what we do every so often our name is pulled to do Monthly Chart reviews of staff in Urgent care, and was showing her how it is done, and that her name is coming up in January and was willing to show her how it is done, but she said that is not for me, I was not told that we had to do this. I am not going to be doing that. Informed her that it is not hard to learn, and was going to show her how to, but she left the room.

ECF No. 27-11 at PageID.476. The fact that this email was forwarded to Lesko was originally overlooked by the Court. Had the email been considered, however, the outcome of the motion would not have changed. This email does not corroborate Defendant's contention that Tokarski was forwarding instances of misconduct to HR prior to Plaintiff's protected activity because the email did not relate to any apparent misconduct. The email simply reflects that Plaintiff inquired of Mr. Marshall, of her own initiative, and asked him about the task he was engaged in (i.e., chart reviews). Plaintiff was ultimately not receptive to learning how to do chart reviews on

that occasion, which is not particularly offensive considering she was not scheduled to do chart reviews until more than two months later (in January) and did not recall being told that chart reviews were one of her assigned tasks. Asking a co-worker about the task he was engaged in and then rebuffing his attempt to teach her the task is probably not an attribute of an ambitious employee. However, it hardly rises to the level of workplace misconduct or poor job performance.[3]

Tokarski also received an additional email from another co-worker named Susan Sobieray on October 27, 2016. This email furnishes more detail about Plaintiff's performance and workplace conduct than the Marshall email. The email was attached to Defendant's motion for summary judgment. ECF No. 27-10 at PageID.474. However, Defendant did not attach the email showing Tokarski forwarded Sobieray's email to Lesko to its motion or its reply brief. Defendant attached the email wherein Tokarski forwarded Sobieray's complaints to HR for the first time in its motion for reconsideration. ECF No. 34-1 at PageID.835-836. In other words, at the time the papers supporting and opposing the motion were considered, they demonstrated that Tokarski had received an email from Ms. Sobieray regarding Plaintiff's performance, not that Tokarski had forwarded the email to HR or otherwise taken any action on it. Tokarski also received other more substantive emails regarding Plaintiff's behavior on December 2, 2016, but there is no evidence those emails were forwarded to HR. ECF No. 27-22 at PageID.493; ECF No. 27-23 at PageID.494.

In sum, Defendant identified two potential errors—the wrong application of the burden shifting scheme and an inaccurate assessment of the timing of Tokarski's interactions with HR, specifically the two emails that were sent to HR prior to the protected activity and her meeting notes from her conversation with Lesko. The first is not error. The burden shifting scheme was

---

[3] In comparison, Tokarski forwarded Sobieray's email from January 7, 2017 (which postdates the day Tokarski learned of the protected activity, December 16) to HR, which discussed specific work performance issues including delaying patient care for excessive amounts of time. ECF No. 27-36.

discussed accurately. The second email was not identified in the parties' motion papers. Furthermore, after once again reviewing the parties' briefs and attending the final pretrial conference, it is less clear who the ultimate decisionmaker is and what the termination process entailed. If Tokarski was the ultimate decisionmaker, then the timing of her forwarding the emails to HR is less relevant or even irrelevant to the retaliation claim.

Tokarski spoke with HR about marking a new employee as unsatisfactory during the employee's first 90 days. She received multiple emails from a variety of Plaintiff's coworkers expressing concerns regarding Plaintiff's behavior. She met with Plaintiff multiple times to discuss her progress or specific incidents and the need for improvement. Tokarski's concerns regarding Plaintiff's behavior started significantly before the protected activity in December. However, Tokarski stated in her deposition that HR and executive leadership were in charge of the decision to terminate Plaintiff. ECF 27-4 at PageID.439.

If Lesko or someone else at HR was the ultimate decisionmaker regarding Plaintiff's termination, the facts are different. In November, Lesko advised Tokarski that she had to consider Plaintiff's performance satisfactory. It is unclear whether this advice was a product of Tokarski's explanation of Plaintiff's performance. Nevertheless, in mid-December, Plaintiff filed her EEOC claim. However, Lesko's assessment of Plaintiff's work performance changes from satisfactory in November to unsatisfactory in mid-January. Lesko's unexplained and prompt change in his assessment of Plaintiff's performance demonstrates a triable issue of fact as to whether Defendant's proffered reason for terminating Plaintiff following the filing of the EEOC complaint was a pretext for retaliation.

IV.

Accordingly, it is **ORDERED** that Defendant's motion for reconsideration, ECF No. 34, is **DENIED**.

It is further **ORDERED** that Plaintiff's request for fees and costs is **DENIED**.

Dated: September 27, 2019              s/Thomas L. Ludington
                                       THOMAS L. LUDINGTON
                                       United States District Judge